IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIE BAILEY, III,

      Plaintiff,                         No. CIV S-04-2067 GEB EFB P

    vs.

J. WEDELL, et al.,

      Defendants.                  ORDER AND
                                             FINDINGS AND RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff proceeds on his June 16, 2005 amended complaint in which he alleges that defendants Penner, Turella, and Howard were deliberately indifferent to his serious medical needs. On December 3, 2008, each defendant filed a separate motion for summary judgment. Defendants argue they are entitled to judgment because plaintiff cannot meet his evidentiary burden to show that they were deliberately indifferent to plaintiff's serious medical needs. Defendants Penner and Howard also argue they are entitled to judgment on the ground that plaintiff did not exhaust available administrative remedies. On March 17, 2009, plaintiff filed separate oppositions to defendants' respective motions. None of the defendants filed replies. For the reasons explained below, the court finds that summary judgment should be granted in favor of each defendant.

## I.  Facts

The following facts are undisputed, except as noted below.  Plaintiff is an inmate incarcerated within the California Department of Corrections and Rehabilitation (CDCR).  Am. Compl. ("Compl.") at 1.  Defendants Penner, Turella, and Howard were employed by CDCR as medical doctors.  Def. Penner Mot. for Summ. J., Penner Decl. in Supp. Thereof ("Penner Decl.") ¶ 2; Def. Turella Mot. for Summ. J., Turella Decl. in Supp. Thereof ("Turella Decl.") ¶ 2; Def. Howard Mot. for Summ. J., Howard Decl. in Supp. Thereof ("Howard Decl.") ¶ 2.  Plaintiff has lower back pain from a degenerative condition in his lower spine.  Def. Penner Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("Penner SUF") 2; Def. Turella Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("Turella SUF") 2; Def. Howard Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("Howard SUF") 2.

On October 9, 1998, plaintiff saw a physician for severe back pain.  Penner SUF 5; Turella SUF 5; Howard SUF 5.  X-rays taken at that time showed that plaintiff's "lumbar spine was within normal limits."  *Id.*  Plaintiff took prescription Ibuprofen for his back pain for approximately two years.  Penner SUF 6; Turella SUF 6; Howard SUF 6.  As of January 4, 2000, plaintiff continued to have back pain.  Penner SUF 7; Turella SUF 7; Howard SUF 7.

On April 6, 2001, plaintiff received medical care from defendant Penner following an incident in which plaintiff's back and left leg "gave out."  Penner SUF 8; Turella SUF 8; Howard SUF 8.  Defendant Penner ordered x-rays for plaintiff's back but denied plaintiff's request for an MRI.  Penner SUF 9; Turella SUF 9; Howard SUF 9.  Defendant Penner also prescribed various muscle relaxers and a Toridol shot for plaintiff's condition.  Penner SUF 11; Turella SUF 11; Howard SUF 11. The x-rays of plaintiff's back showed that plaintiff had the following condition:

> mild degenerative changes of the lumbar spine, especially at the L4-5 level.  The intervertebral disc space narrowing at this level appears to have progressed slightly since October, 1998.

Penner SUF 10; Turella SUF 10; Howard SUF 10.  These x-rays showed only slight degeneration compared to the previous x-rays taken in October, 1998.  Penner Decl. ¶ 6.

In 2002, nearly a year after the first visit, plaintiff saw defendant Penner a second time for treatment of muscle spasms in his back and leg.[1] Penner SUF 12; Turella SUF 12; Howard SUF 12; Compl. at 3:21-23, 10:11-12. Defendant Penner prescribed muscle relaxer medications and again refused plaintiff's request for an MRI. Penner SUF 13; Turella SUF 13; Howard SUF 13. According to defendant, plaintiff showed no symptoms or circumstances at either visit that would lead him to order an MRI instead of x-rays. Penner Decl. ¶ 6.

In April 2003, plaintiff saw a physician following an incident where plaintiff was transported by stretcher to receive emergency medical care. Penner SUF 14; Turella SUF 14; Howard SUF 14; Compl. at 3:25-4:4. According to plaintiff, the physician gave him a Toridol shot and muscle relaxers, and also ordered an MRI of plaintiff's back. Compl. at 4:4-6. The MRI, dated June 23, 2003, showed slight nerve impingement. Penner Decl. ¶ 6.

On October 1, 2003, defendant Turella examined plaintiff for his back condition.[2] Turella Decl. ¶ 4. Based on his examination of plaintiff, defendant Turella rescinded an order dated September 17, 2003, for an elastic support back brace. *Id.* Defendant Turella determined that the back brace for plaintiff was not medically necessary because it would restrict plaintiff's lumbar spinal movement and could actually cause more harm to plaintiff's back condition. *Id.*

////

////

---

[1] The parties do not provide an exact date for this visit.

[2] Plaintiff disputes this fact, stating that "Turella never examined plaintiff, rather only had a conversation with plaintiff prior to rescinding the order for the back brace." Pl.'s Opp'n to Def. Turella Mot. for Summ. J., Stmt. of Facts ("Pl.'s Opp'n to Turella, Stmt. of Facts") ¶¶ 6, 7. However, this statement is directly contradicted by plaintiff's administrative appeal records, wherein plaintiff described Turella's examination of him on October 1, 2003. Pl.'s Opp'n to Def. Turella Mot. for Summ. J., Pl.'s Decl. in Supp. Thereof ("Pl.'s Decl. Re Turella"), Attach. 5 (Log No. 04-01083, dated August 30, 2004) at 2-3 (complaining that Turella asked plaintiff to lay on the table and try bending his legs up and down and back and forth even though he was aware of plaintiff's back injury and that the movements caused plaintiff pain). In light of plaintiff's previous admission that defendant Turella examined him on October 1, 2003, the court concludes that plaintiff's unsupported statement to the contrary does not create a "genuine" dispute of fact.

Plaintiff alleges that on some unidentified date, defendant Turella also rescinded a medical chrono[3] request for soft shoes and that he, along with other prison physicians, denied plaintiff's October 21, 2004 request for an outside physical therapist. Compl. at 6:5-11, 8:15-17. Defendant Turella, however, has no recollection of either event. Turella Decl. ¶¶ 5, 6.

From May 28, 2004 to January 17, 2005, defendant Howard was employed as a medical doctor by CDCR and his primary duties were to oversee the general operations of the medical department, which included reviewing inmate appeals. Howard Decl. ¶ 2. Defendant Howard performed a purely administrative function when reviewing inmate appeals to determine whether all of the issues in the inmate appeals were addressed; he did not second guess the treating physicians. *Id.* Defendant Howard never personally provided plaintiff with medical care, as he never provided direct patient care to inmates. *Id.* ¶¶ 4, 6. Plaintiff's deliberate indifference claim against defendant Howard is premised on his allegation that defendant was made aware of plaintiff's medical problems through the administrative grievance procedure, but failed to remedy them. Compl. at 10:25-11-4.

According to plaintiff, he had back surgery on April 5, 2004. *Id.* at 5:1-3. Because of complications after plaintiff's first surgery (a misaligned screw), plaintiff allegedly had a second surgery on September 7, 2004. *Id.* at 7:1-7. Plaintiff alleges that each defendant intentionally delayed plaintiff's medical treatment, which caused him to suffer for months and resulted in permanent injuries. *Id.* at 13:4-10. Plaintiff claims to have suffered permanent nerve damage because of the length of time it took to get each of his surgeries. *Id.* at 5:1-27. With respect to this last claim, plaintiff alleges that "the delay in getting treatment was a direct product of certain constitutionally deficient policies or practices" that were "tolerated or ignored by the [CDCR] or

---

[3] A chrono is a form that "is used to document information about inmates and inmate behavior. Such information may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social service matters." Cal. Code Regs. tit. 15, § 3000.

4

independently [by] the medical department." *Id.* at 13:11-15.

## II.     Exhaustion of Administrative Remedies

Defendants Penner and Howard argue they are entitled to judgment because plaintiff has not exhausted his administrative remedies concerning his claims against them. Def. Penner Mot. for Summ. J., Mem. of P. & A. in Supp. Thereof ("Penner P. & A.") at 13-16; Def. Howard Mot. for Summ. J., Mem. of P. & A. in Supp. Thereof ("Howard P. & A.") at 14-16. As discussed below, exhaustion is an affirmative defense on which defendants bear the burden of proof and they have not met their burden of proving the absence of exhaustion.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust nonjudicial administrative remedies as required by § 1997e(a) is not jurisdictional. *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003). Moreover, the Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S. Ct. 910, 921 (2007). The burden of raising and proving the absence of exhaustion is on the defendant. *See Wyatt*, 315 F.3d at 1119.

Here, defendants Penner and Howard argue that plaintiff has failed to exhaust his administrative remedies, but offer no evidence to prove the absence of exhaustion. Rather, they point only to the decisions regarding administrative appeals that are attached to plaintiff's complaint and argue that those exhibits do not prove exhaustion. *See* Def. Penner P. & A. at 13-16; Def. Howard P. & A. at 14-16. As explained above, however, § 1997e(a) does not require a plaintiff to plead exhaustion, and plaintiff has not conceded nonexhaustion. *See Wyatt*, 315 F.3d at 1119, 1120; *see also* Compl. at 14. Assuming the attached exhibits do not prove exhaustion, as defendants contend, this does not foreclose the possibility that plaintiff otherwise exhausted

his administrative remedies, or that plaintiff's administrative remedies were made unavailable to him. *See* Pl.'s Opp'n to Def. Penner Mot. for Summ. J., Mem. of P. & A. in Supp. Thereof ("Pl.'s Opp'n to Penner, P. & A.") at 25 (referring to administrative appeals that were ignored or never returned). Defendants submit no evidence regarding these issues, and therefore, have not carried their burden of proving nonexhaustion. *See Gray v. Woodford*, No. 05-cv-1475 J, 2007 U.S. Dist. LEXIS 70839, at *46-47 (S.D. Cal. Sept. 25, 2007) (denying defendants' motion to dismiss for failure to exhaust where defendants presented no evidence of nonexhaustion); *Pamer v. Cal. Dep't of Corr.*, No. 04-3252 SI, 2007 U.S. Dist. LEXIS 8508, at *7-8 (N.D. Cal. Jan. 19, 2007) (denying defendants' motion to dismiss for failure to exhaust where motion was "unaccompanied by any evidence regarding the [California Department of Corrections and Rehabilitation's] records of the inmate appeals the plaintiff-prisoner had filed.").

Having concluded that defendants are not entitled to judgment as a matter of law based on failure to exhaust, the court next addresses the defendants' motion as it relates to the merits of the plaintiff's claims.

**III.   Summary Judgment Standards**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; *e.g.*, issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon

7

the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On March 22, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### A. Legal Standard for Eighth Amendment Claims

To state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some

treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.* However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**B.     Analysis**

The individually named defendants' motions are addressed below in the context of the allegations directed at each of them. The court first addresses their common argument that they are entitled to summary judgment because plaintiff cannot show a serious medical need. Def. Penner P. & A. at 12; Def. Turella Mot. for Summ. J., Mem. of P. & A. in Supp. Thereof ("Turella P. & A.") at 12; Def. Howard P. & A. at 12-13. In making this argument, defendants admit that plaintiff suffered from complications associated with his back condition, and that he has experienced back problems since 1998. *Id.* Furthermore, it is undisputed that plaintiff has a degenerative condition in his lower spine and that it causes plaintiff to experience lower back pain. *See* Penner SUF 2; Turella SUF 2; Howard SUF 2. On this record, the court must reject defendants' argument, as there is no question that plaintiff's back condition constitutes a serious medical need. *See, e.g., Ellington v. Alameida*, No.04-0666 DFL KJM P, 2007 U.S. Dist. LEXIS 5018, at *18 (E.D. Cal. Jan. 24, 2007), *adopted in full by* 2007 U.S. Dist. LEXIS 23499 (back problem is serious medical need so long as diagnosis is not rendered solely by the inmate plaintiff).

////

////

### 1. **Defendant Penner**

Plaintiff claims that defendant Penner was deliberately indifferent to his serious medical needs by refusing to order an MRI. Compl. at 9-10. Defendant Penner contends that plaintiff cannot adduce evidence to establish a genuine dispute about whether he was deliberately indifferent to plaintiff's serious medical needs.

It is undisputed that defendant Penner treated plaintiff on April 6, 2001, by ordering x-rays to diagnose plaintiff's back condition and prescribing medications to treat plaintiff's back pain. Penner SUF 8, 9, 11. It is also undisputed that at plaintiff's visit with defendant Penner nearly one year later, defendant prescribed plaintiff muscle relaxers. *Id.* at 12, 13. According to defendant Penner, plaintiff did not need an MRI at either visit, and he provided plaintiff with prompt and proper care. Penner Decl. ¶¶ 6, 7. Plaintiff eventually received an MRI on June 23, 2003. Compl. at 4:4-6; Penner Decl. ¶ 6.

Plaintiff acknowledges that defendant Penner temporarily treated his symptoms, but argues that this was not a "true treatment," because defendant did not conduct the necessary tests to determine the nature and extent of plaintiff's back condition. *See* Pl.'s Opp'n to Penner, P. & A. at 11-12, 19, 20. Plaintiff points out that once he finally received an MRI, it led to him having back surgery, which, according to plaintiff, proves that defendant Penner acted with deliberate indifference. *Id.* at 6, 22, 23. However, the undisputed facts show that during the two visits identified above, defendant Penner determined that there were no symptoms or circumstances that necessitated an MRI instead of x-rays. Aside from his own belief, plaintiff provides no evidence that defendant Penner's decision not to order an MRI was medically unacceptable under the circumstances or done in conscious disregard of an excessive risk to plaintiff's health. *See Franklin*, 662 F.2d at 1344. This is precisely the sort of disagreement as to the appropriate treatment that will not give rise to an Eighth Amendment claim. Plaintiff's disagreement in this regard does not create a genuine issue with respect to whether defendant Penner was deliberately indifferent to plaintiff's medical needs. *Toguchi*, 391 F.3d at 1058.

As further evidence of defendant Penner's deliberate indifference, plaintiff points to defendant Penner's own declaration. Defendant states in his declaration that he customarily does not order an MRI after only two visits with a patient, but that he typically does order an MRI when a patient's back condition does not improve or further deteriorates over time. Penner Decl. ¶ 5. According to plaintiff, this shows that defendant Penner acted with deliberate indifference, because he arbitrarily refused to order an MRI based on the number of times defendant Penner saw plaintiff, and because defendant deviated from his own customary practice by failing to order an MRI in plaintiff's case. Pl.'s Opp'n to Penner, P. & A. at 10, 11, 20, 21, 23, 24. However, it is evident from defendant Penner's declaration that his decision not to order an MRI for plaintiff was not based on the number of times he had seen plaintiff. Rather, the decision was squarely based on the fact that the x-rays taken on April 6, 2001 showed only "slight" degeneration compared to the previous x-rays taken in October 1998, and that during plaintiff's two visits with defendant Penner, plaintiff did not present symptoms that would lead defendant to order an MRI instead of x-rays. *See* Penner Decl. ¶ 6. Plaintiff cannot establish that defendant Penner was deliberately indifferent to plaintiff's serious medical needs when he refused to order an MRI, and therefore, summary judgment in favor of Penner is proper.

### 2. **Defendant Turella**

Likewise, defendant Turella is entitled to summary judgment. Even viewing the evidence in the light most favorable to plaintiff, no reasonable juror could conclude that defendant Turella knew that plaintiff faced a substantial risk of serious harm and disregarded it.

#### a. **Back Brace**

As to plaintiff's claim regarding the back brace, defendant Turella admits that he rescinded the order. Turella Decl. ¶ 4. Doing so was not in deliberate indifference to plaintiff's medical needs. According to defendant Turella, the back brace was not medically necessary and could have made plaintiff's back condition worse because it limits mobility. *Id.* While plaintiff offers several arguments in response to defendant Turella's motion, he simply relies on his own

differing opinion as to the proper course of medical treatment for the condition that defendant Turella was addressing. Plaintiff does not come forward with any evidence that creates a triable issue of fact for trial as to whether this defendant was deliberately indifferent to that condition.

In his declaration, plaintiff states that defendant Turella's decision to rescind the order for the back brace contradicts the reason for why it was originally ordered. Pl.'s Decl. Re Turella ¶ 6. According to plaintiff, the back brace was ordered for the very purpose of limiting plaintiff's mobility.[4] Pl.'s Opp'n to Turella, Mem. of P. & A. in Supp. Thereof ("Pl.'s Opp'n to Turella, P. & A.") 3-4, 11; Pl.'s Decl. Re Turella ¶ 6. Plaintiff's evidence suggests that two courses of treatment existed for plaintiff, one that limited plaintiff's mobility, and one that did not. However, the evidence does not suggest that defendant Turella's course of treatment was medically unacceptable under the circumstances or done in conscious disregard of an excessive risk to plaintiff's health. *See Franklin*, 662 F.2d at 1344; *Toguchi*, 391 F.3d at 1058-60. Rather, the evidence shows that defendant Turella rescinded the order for a back brace to prevent further harm to plaintiff. Although plaintiff disagrees with the choice of treatment provided, he has not shown that such choice amounts to deliberate indifference.

### b. Soft Shoes

Plaintiff further alleges that defendant Turella was deliberately indifferent to his medical needs when he rescinded plaintiff's soft shoe chrono on the ground that soft shoes were not medically indicated for plaintiff. Compl. at 8. Plaintiff is not specific as to when defendant Turella allegedly rescinded the soft shoe chrono. *See id.* at 4, 5. However, plaintiff presents evidence that his soft shoe chrono was rescinded on October 1, 2003. Pl.'s Decl. Re Turella,

---

[4] Plaintiff further contends that defendant Turella made the decision to rescind the order for the back brace without even examining plaintiff and by only asking him a few questions instead. Pl.'s Opp'n to Turella, P. & A. at 9, 17; Pl.'s Decl. Re Turella ¶ 14. As previously noted, plaintiff's own exhibit directly contradicts this assertion. *See* Pl.'s Decl. Re Turella, Attach. 5 at 3. Even assuming defendant Turella rescinded the order based only upon a conversation with plaintiff, this, without more, would not establish defendant's deliberate indifference.

1  Attach. 8 (Log No. SAC 03-01972, Director's Level Appeal Decision).  While the evidence does
2  not state who rescinded the soft shoe chrono, it can be inferred that it was defendant Turella.  *See*
3  *id.* (noting that plaintiff's soft shoe chrono was rescinded on October 1, 2003, and that on that
4  same day, Turella rescinded the order for plaintiff's back brace).  Even drawing this inference in
5  plaintiff's favor, however, there is no indication that this defendant rescinded the soft shoe
6  chrono with deliberate indifference to plaintiff's medical needs.  As stated in the decision:

> Soft soled shoes (crepe soles) are designed for skid resistance and they do not aid in reduction of back pain.  Personal tennis shoes, which the appellant may wear, are not permitted in the visiting room as it violates security.  The appellant has no physical findings to substantiate the need for special shoe accommodation.

10  *Id.*  Once again, plaintiff's deliberate indifference claim is premised on a difference of opinion
11  regarding the proper course of treatment, and plaintiff fails to provide any evidence suggesting
12  that the decision to rescind plaintiff's soft shoe chrono was medically unacceptable under the
13  circumstances.

14  While plaintiff also provides evidence that he was denied soft shoes on June 18, 2004,
15  this evidence, at most, shows that it was Dr. Abramowitz who determined that soft shoes were
16  not medically indicated in plaintiff's case, and that defendant Turella only reviewed plaintiff's
17  inmate complaint against Abramowitz.  *Id.*, Attach. 4 (Log No. SAC-H-04-01000) at
18  unnumbered pages 4 (first level appeal response issued by Abramowitz, indicating that on June
19  18, 2004, Abramowitz told plaintiff that soft shoes were not medically indicated in his case), 5-6
20  (second level appeal response stating "J. Turella, D.O., Physician and Surgeon, reviewed this
21  matter" and "finds that Dr. Abramowitz addressed all items of your appeal thoroughly and
22  concisely").  This evidence does not suggest that defendant violated plaintiff's Eighth
23  Amendment rights.  Rather, it appears that defendant Turella was responsible for determining
24  whether Abramowitz adequately addressed plaintiff's inmate appeal, but does not suggest that
25  defendant Turella did so in a manner amounting to deliberate indifference to plaintiff's serious
26  medical needs.

14

### c. **Physical Therapy**

Plaintiff also alleges that defendant Turella was deliberately indifferent to plaintiff's medical needs by denying his October 21, 2004 request for physical therapy. Compl. at 6. Plaintiff stresses in his opposition brief that the issue with respect to this claim is whether defendant Turella denied plaintiff's request for physical therapy after plaintiff had his second surgery on September 7, 2004. Pl.'s Opp'n to Turella, P. & A. at 11, 18-19. However, plaintiff does not provide any evidence showing that he requested physical therapy after his second surgery. Nor does plaintiff provide any evidence showing that defendant denied plaintiff's request for physical therapy after his second surgery. Accordingly, the court finds that there is no genuine issue of material fact with respect to plaintiff's physical therapy claim.

### 3. **Defendant Howard**

Plaintiff claims that defendant Howard was deliberately indifferent to his serious medical needs because he was aware of plaintiff's medical problems through the administrative grievance process, including plaintiff's purported need for soft shoes, the delays in receiving surgeries, and the pain plaintiff endured while awaiting each surgery, but that Howard did nothing to help him. Compl. at 11; Pl.'s Opp'n to Howard Mot. for Summ. J., Mem. of P. & A. in Supp. Thereof ("Pl.'s Opp'n to Howard, P. & A.") at 3, 8, 9, 15, 17, 18, 19. He further claims that defendant Howard failed to properly supervise those under him and simply "signed off" on the findings of other physicians and allowed the physicians against whom plaintiff's inmate grievances were made, to review their own actions. Compl. at 11; Pl's Opp'n to Howard, P. & A. at 3, 8, 10, 14; Pl.'s Opp'n to Howard, Stmt. of Facts 2.

It is undisputed that defendant Howard was not responsible for providing direct care to plaintiff, and that defendant Howard has never provided plaintiff with medical consultation, care, or treatment. Howard SUF 21, 22. Instead, defendant oversaw the

general operations of the medical department, which included reviewing inmate appeals. *Id.* at 16. Defendant Howard was not directly responsible for providing medical care to plaintiff, and cannot be held vicariously liable for the alleged failings of his subordinates. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (no *respondeat superior* liability under § 1983). Supervisors are only liable under § 1983 when the evidence shows that they participated in, directed, or knew of the violations, and failed to intervene to prevent them. *Id.* Here, there is no evidence suggesting that the delays in receiving his back surgeries violated plaintiff's constitutional rights. Nor is there evidence showing that defendant Howard was aware of these delays, or that this defendant was aware that plaintiff was in extreme pain during these delays. There is evidence that defendant Turella and another physician reviewed several of plaintiff's medically related administrative appeals on behalf of Howard.[5] *See, e.g.,* Pl.'s Decl. Re Turella, Attach. 4 at unnumbered page 5-6 (Log No. SAC-H-04-01000); Attach. 5 at unnumbered pages 14-16 (Log No. SAC-H-04-01083); Attach. 6 at unnumbered pages 5-6 (Log No. SAC-H-04-00879). However, there is no evidence showing that the recommendations made by physicians that defendant Howard allegedly "signed off" on, fell outside the range of care required by the Eighth Amendment. Therefore, plaintiff cannot establish that this defendant was deliberately indifferent to plaintiff's serious medical needs by deferring to the medical judgments of other physicians. On the record currently before the court, there is no genuine dispute about whether defendant Howard caused, participated in or ratified a violation of plaintiff's constitutional rights.

////

---

[5] In his opposition to defendant Howard's motion for summary judgment, plaintiff fails to provide any evidence showing defendant's personal participation or knowledge of any decision regarding plaintiff's medical care. The evidence cited above was provided with plaintiff's opposition to defendant Turella's motion for summary judgment, but is relevant to plaintiff's claim against defendant Howard.

16

### IV. Plaintiff's Second Claim

In his verified complaint, plaintiff alleges that each defendant intentionally delayed plaintiff's medical treatment, which caused him to suffer for months and resulted in permanent injuries. Compl. at 13:4-10. Plaintiff claims that this delay "was a direct product of certain constitutionally deficient policies or practices" that were "tolerated or ignored by the [CDCR] or independently [by] the medical department."[6] *Id.* at 13:11-15. As plaintiff properly notes in his opposition briefs, defendants do not address these allegations in their motions. *See* Pl.'s Opp'n to Turella, P. & A. at 22; Pl.'s Opp'n to Howard, P. & A. at 22. Nor do defendants address these allegations in their replies, as none were filed. The court could construe this as defendants' concession that issues remains for trial. However, the seemingly conclusory nature of the allegations in the second claim make it apparent that the claim should be addressed by a properly-filed pretrial motion and not left for a final pretrial statement or attacked in the guise of an in limine motion. Given the court's need to manage its docket to eliminate or narrow issues so that only those properly warranting trial proceed to trial, the court will grant defendants leave to file a single motion that addresses plaintiff's second claim for relief against each defendant. That motion shall be filed within 15 days.

### V. Conclusion

Accordingly, IT IS HEREBY ORDERED that the dispositive motions deadline is extended to 15 days from the date this order is issued, so that defendants may file a single motion that addresses plaintiff's second claim for relief.

////

////

---

[6] Although the claim is captioned as a cause of action for denial of 14th Amendment rights to equal protection and due process, the allegations in the body of the claim assert constitutionally inadequate medical treatment based on delay in treatment and/or failure to treat.

17

1  Further, IT IS HEREBY RECOMMENDED that defendants' motions for
2  summary judgment (docket nos. 76, 77, 78) be granted.

3  These findings and recommendations are submitted to the United States District
4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within
5  twenty days after being served with these findings and recommendations, any party may
6  file written objections with the court and serve a copy on all parties.  Such a document
7  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."
8  Failure to file objections within the specified time may waive the right to appeal the
9  District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v.*
10 *Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11 Dated: August 25, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE